UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

CASE NO.: 09:16-CIV-81942-RLR

COMPULIFE SOFTWARE, INC.,

    Plaintiff,

vs.

MOSES NEWMAN, AARON LEVY,
DAVID RUTSTEIN a/k/a DAVID
GORDON a/k/a BOB GORDON
a/k/a NATE GOLDEN and BINYOMIN
RUTSTEIN a/k/a BEN RUTSTEIN,

    Defendants.
_____/

## DEFENDANTS MOSES NEWMAN AND AARON LEVY'S
## RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendants, MOSES NEWMAN and AARON LEVY, file this their Response to Plaintiff's Motion for Preliminary Injunction and state as follows:

### INTRODUCTION

Plaintiff has previously filed an action in this Court in the case of *Compulife Software, Inc. v. Binyomin Rutstein, et al.*; Case No. 16-CV-81942 ("First Case") which is still pending and has been consolidated with this case. In the First Case, Plaintiff claimed that co-Defendants, DAVID RUTSTEIN and BINYOMIN RUTSTEIN, obtained unauthorized access to its source code for its quote engine and reproduced the quote engine on various websites for members of www.naaip.org. However, Plaintiff did not seek any preliminary injunction or temporary restraining order in the First Case.

Case No. 16-CV-81942-RLR

Plaintiff has subsequently filed this action alleging mostly the same facts and causes of action as the First Case. The only difference is that Plaintiff includes allegations concerning an alleged "scraping" of over 800,000 insurance quotes from Plaintiff's website at www.term4sale.com and has sued Defendants, MOSES NEWMAN and AARON LEVY, as well. At the January 26, 2017 status conference in this case, Plaintiff's counsel represented to the Court that the difference between the present case and the First Case is the inclusion of the incident in September of 2016. Because the other allegations were already brought in the First Case and Plaintiff failed to seek a preliminary injunction, the only behavior subject to the preliminary injunction must be the alleged "scraping" and subsequent use of the data.

## SUMMARY OF FACTS

Plaintiff produces computer software that provides insurance quoting systems to insurance agents. (Deposition of Robert Barney[1] (Barney Depo.) 10:1-10:3). An agent may purchase the software and a licensing agreement or an internet version to place on its website. (Barney Depo. 46:4-47:10; 133:2-135:25). In addition, Plaintiff provides a database culled from information provided by various insurance companies to generate the quotes that appear in the life insurance quote engines in the software or online. (Barney Depo. 46:4-47:10).

Plaintiff also maintains its own website at www.term4sale.com that includes a life insurance quote engine that is available to the public at no cost and, prior to September 5, 2016, no licensing agreement. (Barney Depo. 55:10-56:6; 150:7;150:22). The website allows a consumer to input his or her information and receive various competitive life insurance quotes from those companies that

---

[1] Robert Barney's deposition has been filed in the First Case at Docket Entry 74.

2

Case No. 16-CV-81942-RLR

have a relationship with Plaintiff. (Barney Depo. 55:10-56:6). The consumer may also choose to review a list of local insurance agents that have paid Plaintiff to be listed on the website. (Barney Depo. 56:3-56:10). Plaintiff does not provide quotes from all existing life insurance companies in its software or on www.term4sale.com, only from those companies that choose to provide Plaintiff with their information. (Barney Depo. 25:15-26:17).

Plaintiff generates the quotes based upon information received by the various life insurance companies. (Barney Depo. 95:10-96:4). However, Plaintiff cannot guarantee that the quote provided will be the actual premium charged by the insurance company to the consumer. (Barney Depo. 95:5-95:9). These insurance companies may also provide their information to other insurance quoting companies that compete with Plaintiff. (Barney Depo. 93:16-94:24). The competitors use the same information but may come up with marginally different premiums in their quote engines. (*Id.*) Again, however, none of these quotes are guaranteed.

In this action, the only new allegations from the First Case involve an incident in September of 2016 whereby Plaintiff claims that Defendants generated over 800,000 quotes on its www.term4sale.com with a get command and then stored the quotes in a database to be used by the quote engine on the www.naaip.org websites and www.beyondquotes.com. (Barney Depo. 80:5-81:24). Robert Barney has testified at his deposition that Plaintiff has been able to shut down the access point from Israel that Plaintiff believes was used in the September 2016 incident. (Barney Depo. 81:4-81:15). As a result, the only quotes that were allegedly taken were the quotes from September of 2016 that have become stale with the passage of time. (Barney Depo. 81:21-82:15). Robert Barney further testified that Plaintiff has shut down the ability for more quotes to be taken.

(*Id.*). Plaintiff also implemented other changes to secure data after discovering the alleged infringement and misappropriation. (Barney Depo. 78:8-79:9).

Finally, Robert Barney was unable to identify any actual damages suffered as a result of the existence of www.naaip.org or the incident in September of 2016. Based upon Robert Barney's own testimony, there has been only a minor decrease in sales of the software in some areas but increases in others. (Barney Depo. 163:20-171:19). In addition, Robert Barney recognized that new competitors to Plaintiff joined the market in 2015 which may have also impacted sales. (Barney Depo. 166:23-167:1; 171:6-171:23). Finally, Robert Barney adm7itted that Plaintiff did not make any additional monetary expenditures to subsequently protect its software and website from any alleged further infringement or misappropriation. (Barney Depo. 171:24-173:2).

As a result, Defendants object to the Motion for Preliminary Injunction because Plaintiff has failed to demonstrate any immediate danger of irreparable harm. Defendants believe this is merely a second effort by Plaintiff to shut down www.naaip.org because it failed to seek similar relief in the First Case. Robert Barney actually testified that his goal is to shut down www.naaip.org, a recognized competitor, and even though Plaintiff could pursue that option with the hosting company, Plaintiff would prefer to proceed with litigation to reach its intended results. (Barney Depo. 148:24-149:9).

## MEMORANDUM OF LAW

This Court may grant preliminary injunctive relief only if Plaintiff is able to demonstrate that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the

proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movement clearly establishes the burden of persuasion followed by the four requisites." *Id.* (Citation omitted).

### I. There is not a substantial likelihood of Plaintiff's success on the merits.

Plaintiff's causes of action do not have a substantial likelihood of success on the merits because Plaintiff failed to protect its trade secrets. Anyone may run the quote engine on www.term4sale.com. Plaintiff is not alleging, as in the First Case, that Defendants improperly accessed its software or computer program. Instead, Plaintiff claims that Defendants directed the quote engine on www.term4sale.com to run in excess of 800,000 quotes and then created a database containing those quotes. There admittedly was no limit to a consumers use of those quotes nor any warnings on www.term4sale.com limiting use of the information procured until after the September 2016 incident. Robert Barney testified that these are quotes from insurance companies that may be provided to Plaintiff's competitors as well. Plaintiff does not own the data provided by the life insurance companies.

Even if the compilation is determined to be a trade secret, Plaintiff has an affirmative duty to protect that trade secret in order to prevail on its causes of action for trade secret misappropriation. *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F.Supp.2d 1271 (S.D. Fla., 2001). Plaintiff has failed to allege that its made the reasonable efforts to protect its data compilation prior to discovering the alleged theft by Defendants. Plaintiff has not referenced any licensing agreement in place on www.term4sale.com prior to the alleged incident in its Complaint,

5

Case No. 16-CV-81942-RLR

Motion for Preliminary Injunction or supporting declarations. In fact, Mr. Barney testified that Plaintiff only began using an internet licensing agreement after discovering Defendants' alleged infringement and misappropriation. If licensing agreements were not in place, then Plaintiff's trade secrets were not reasonably protected and Plaintiff cannot prevail on its claims that the information allegedly obtained by Defendants would even be subject to any trade secret protection.

**II.    Plaintiff faces no immediate and irreparable harm as a result of Defendants' action.**

Even if Plaintiff had a substantial likelihood of prevailing on the merits, Plaintiff cannot demonstrate any "immediate and irreparable harm." To show irreparable injury, Plaintiff must clearly establish that it will be harmed by an "actual and imminent injury for which adequate compensatory or other corrective relief will not be available." *Moon v. Med. Tech. Assocs., Inc.*, No. 14-11155, *6 (11th Cir. 2014). In the present case, Plaintiff cannot demonstrate any immediate danger of irreparable harm.

First, Plaintiff waited three (3) months before seeking this preliminary injunction. "A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.Com, Inc.*; No. 15-14390, *6 (11th Cir. 2016) (*Siegel*, 234 F.3d at 1176-77 (quoting *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990))). The purpose behind obtaining a preliminary injunction is the need to quickly protect a plaintiff's rights before a case can be resolved on its merits. *Id.* at 7.

In this case, Plaintiff could have acted quickly given that pleadings filed in this case are remarkably similar to the pleadings in the First Case and discovery was already pending in the First

Case No. 16-CV-81942-RLR

Case. In fact, Defendants in the First Case had not yet filed their answer when this alleged incident took place and Plaintiff could have easily sought to leave to amend its complaint and add Defendants, MOSES NEWMAN and AARON LEVY. Robert Barney testified about the September 2016 incident in his deposition in November of 2016 in the First Case. Further, considering that the value of the quotes diminish with time, so does the urgency to stop the use of the data. Notwithstanding, Plaintiff waited a full three (3) months before acting and at a time when, by Robert Barney's own admission, the data had become stale. Other courts have found that "a party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *Id. See also, Citibank*, *N.A*. *v*. *Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985); *Taylor v*. *Biglari*, 971 F. Supp. 2d 847, 853 (S.D. Ind. 2013); *Silber v*. *Barbara's Bakery*, *Inc*., 950 F. Supp. 2d 432, 439-40 (E.D.N.Y. 2013); *Hi-Tech Pharm*., *Inc*. *v*. *Herbal Health Prods*., Inc., 311 F. Supp. 2d 1353, 1357-58 (N.D. Ga. 2004); *Seiko Kabushiki Kaisha v*. *Swiss Watch Int'l*, *Inc*., 188 F. Supp. 2d 1350, 1355-56 (S.D. Fla. 2002).

     Second, the lack of immediate harm is evidenced by the fact that Robert Barney testified that Plaintiff updates its data monthly. As a result, the data culled in September of 2016 becomes more and more stale as time passes and would no longer mirror the data on www.term4sale.com. In addition, Plaintiff's other competitors have the same data supplied by life insurance companies and often the difference between life insurance quotes amongst competitors are merely pennies. The quotes themselves are not even guaranteed to the consumers using www.term4sale.com and Plaintiff's website contains disclaimers to that effect. Accordingly, Plaintiff faces no real threat to its reputation because a consumer would be unlikely to realize any difference or similarity between

Case No. 16-CV-81942-RLR

the results of the quote engine at www.term4sale.com, www.naaip.org, www.beyondquotes.com or any other comparison website.  Therefore, the only real damage to Plaintiff can only be economic to the extent Plaintiff may be losing potential customers to www.naaip.org.  A preliminary injunction is not warranted where Plaintiff may be adequately compensated by money damages.  *See Tropical Fruit Trading, Inc. v. AgroFarms, LLC*, No. 16-CV-21735, *5 (S.D. Fla. 2016).

Third, Plaintiff has implemented protections to prevent such actions in the future.  Robert Barney testified that Plaintiff knows the access point and turned off the quote engine restricting further access.  In addition, despite claiming to have evidence that additional attempts have been made to this Court at the status conference, Plaintiff has not actually presented any evidence that anyone from Israel, or anywhere else, has made any additional attempts to generate large numbers of quotes from www.term4sale.com.  Plaintiff could also report the offending action to www.naaip.org's hosting company to have the site shut down, but as Robert Barney testified, has refused to pursue that option.  Therefore, the alleged damage can be stopped without the need of a preliminary injunction.

    **III.**    **The threatened injury to Plaintiff does not outweigh whatever damage the proposed injunction may cause the opposing party and would be adverse to the public interest.**

As explained above, Plaintiff faces no threatened injury from the data allegedly "scraped" in September of 2016 because the data is no longer current and Plaintiff has acted to prevent such access in the future.  There is also no evidence presented to the Court that any additional efforts have been made from any source to generate large quantities of quotes on www.term4sale.com.  However, if www.naaip.org is required to be enjoined from running its quote engine on the multitude of agents

Case No. 16-CV-81942-RLR

websites, those agents will be greatly damaged by losing their websites and access to business.

Presently, www.naaip.org hosts almost 7,000 website for insurance agents. A percentage of those agents sell life insurance and those websites with quote engines may be impacted by an immediate and harsh closure whereas Plaintiff suffers no ascertainable harm. Additionally, there is no evidence presented that the current quote engine utilized by the www.naaip.org agent websites is the version Plaintiff claims to have copyrighted in the First Case. The evidence presented by Plaintiff in the form of Nancy Miracle's Declaration discusses website comparisons from the time of the incident and not presently. Nancy Miracle compared the data on the www.term4sale.com, www.naaip.org and www.beyondquotes.com that are generated by the respective quote engines. (Declaration of Nancy Miracle, DE 8). Notably missing, however, is a current comparison in light of Robert Barney's testimony that Plaintiff updates its data monthly. Presumably, with data updates the quotes generated by www.term4sale.com would differ from www.naaip.org if the latter is relying on quotes generated in September of 2016.

Finally, because of the competitiveness of the life insurance quoting market, the differences in quotes amongst competitors and the fact that no particular quote from any of these quote engines is guaranteed, the consumer is not harmed in anyway by the concurrent existence of Plaintiff, www.naaip.org and www.beyondquotes.com. In fact, the consumer actually benefits from having various options from which to seek life insurance quotes.

## CONCLUSION

Based upon the foregoing, Plaintiff cannot satisfy all four requisites necessary to obtain the preliminary injunction. Most notably, Plaintiff cannot demonstrate any immediate and irreparable

Case No. 16-CV-81942-RLR

harm resulting from the alleged actions of Defendants. Accordingly, this Court should deny Plaintiff's Motion for Preliminary Injunction.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of February, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on Joel B. Rothman, Esq., Schneider Rothman, 4651 North Federal Highway, Boca Raton, Florida 33431, joel.rothman@sriplaw.com via transmission of Notices of Electronic Filing generated by CM/ECF.

                                              By: s/ Allison L. Friedman
                                                  ALLISON L. FRIEDMAN, ESQ.
                                                  ALLISON L. FRIEDMAN, P.A.
                                                  20533 Biscayne Boulevard, Suite 4-435
                                                  Aventura, Florida 33180
                                                  (305) 905-2679 (Telephone)
                                                  (305) 692-9387 (Facsimile)
                                                  Ralfriedman@hotmail.com